John R. Till     SBN 178763     JTill@PaladinLaw.com
Kirk M. Tracy  SBN 288508     KTracy@PaladinLaw.com
PALADIN LAW GROUP® LLP
1176 Boulevard Way
Walnut Creek, CA  94595
Telephone:     (805) 898-9700
Facsimile:      (805) 852-2495

Counsel for Luis Family Trust, by and through its
trustees, James M. Luis and Linda M. Luis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Luis Family Trust, by and through its trustees, James M. Luis and Linda M. Luis<br><br>*Plaintiff*,<br><br>*v.*<br><br>SALISBURY-KILMER CORPORATION, dba S&K TOYOTA, a suspended corporation; CHARLES KILMER, as an individual and as owner and operator of S&K Toyota; ESTATE OF CORAMARIE HOPFENBECK, DECEASED, an individual; and DOES 1 through 100, inclusive.<br>*Defendants*. | Case No. 4:21-cv-8797<br><br>COMPLAINT FOR:<br><br>1. Abatement of Imminent and Substantial Endangerment—RCRA § 7002(a)(1)(B)<br>2. Cost Recovery under CERCLA § 107(a)<br>3. Cost Recovery under the Hazardous Substance Account Act<br>4. Abatement of a Public Nuisance<br>5. Abatement of a Private Nuisance<br>6. Continuing Trespass<br>7. Contribution<br>8. Equitable Indemnity<br>9. Declaratory Relief |

Plaintiff Luis Family Trust, by and through its trustees, James and Linda Luis ("Plaintiff")
brings this action against Salisbury-Kilmer Corporation, dba S&K Toyota; Charles Kilmer; Estate
of Coramarie Hopfenbeck (aka Coramarie Allengaugh), Deceased; and Does 1 through 100
(collectively, "Defendants"); and alleges upon knowledge as to its own acts, and upon information
and belief as to the acts of all others, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff files this action to address and resolve the continuing environmental
problem created by Defendants' acts or omissions that caused and continue to cause damage to
health, safety, and property of Plaintiff, surrounding properties, and the environment.



2.     The area of contamination for which Plaintiff seeks relief includes the property located at 21715 Mission Boulevard, Hayward, California (the "Property") and the vertical and horizontal extent of the contamination at or emanating from the Property, including the locations where contamination has come to be located or threatens to become located (collectively, the "Site").

## PARTIES

### *Plaintiff*

3.     Plaintiff is the owner of the Property. Plaintiff took title to the Property in 1999.

### *Defendants*

4.     Salisbury-Kilmer Corporation, dba S&K Toyota ("S&K Toyota") leased the Property from approximately 1962 to 1990 and continuously operated an automotive business at the Property.

5.     Charles Kilmer is an individual who served as the owner and operator of S&K Toyota from at least 1962 to 1990.

6.     Salisbury-Kilmer Corporation was incorporated on or about September 27, 1966.

7.     Salisbury-Kilmer Corporation is a suspended California Corporation.

8.     The Estate of Coramarie Hopfenbeck (aka Coramarie Allengaugh), Deceased, is named as a defendant herein to the extent of her estate's assets, whether distributed or undistributed, and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which she was protected by liability insurance policies.  Coramarie Allengaugh was the owner of the Property and leased it to various automotive operations such as S&K Toyota until approximately 1999 when she sold the Property to Plaintiff.

9.     Defendants Doe 1 through 100, inclusive, respectively, are persons, partnerships, corporations, or entities who are, or were, responsible for, or caused or contributed to contamination found at or emanating to or from the Site that is the subject of this complaint, or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of the Defendants' facilities which have caused or contributed to the contamination at or emanating to or from the Site or operations on the Property or within the Site as identified herein, or in some



1   other manner are responsible for the occurrences herein alleged and proximately caused damages

2   to Plaintiff, including the handling, transport, disposal, release, storage, use, or generation of

3   hazardous substances, hazardous materials, or hazardous waste at S&K Toyota Facility or

4   Facilities.

5   **JURISDICTION, VENUE, AND NOTICE**

6   10.      This Court has jurisdiction over the subject matter of Plaintiff's First and Second

7   and Causes of Action pursuant to section § 7002(a) of the Resource Conservation and Recovery

8   Act ("RCRA"), 42 U.S.C. § 6972(a), section 107 of the Comprehensive Environmental Response,

9   Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and 28 U.S.C. § 1331.

10   11.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the

11   subject matter of Plaintiff's other causes of action because those claims are so related to the federal

12   claims in this action that they form the same case and controversy under Article III of the U.S.

13   Constitution.

14   12.      Venue is proper in this Court pursuant to RCRA § 7002(a), because the alleged

15   violation or alleged endangerment may occur in the district, 42. U.S.C. § 6972(a), because the

16   release and damage occurred at the property and business operations within this district.

17   13.      Plaintiff provided notice of the actual and threatened endangerment, injury, and

18   damage alleged herein by mailing notices of endangerment and of intent to file suit pursuant to

19   RCRA § 7002(b)(2)(A), 42 U.S.C. § 6972(b)(2)(A), to the U.S. Environmental Protection Agency

20   ("US-EPA"), the California EPA ("Cal-EPA"), the California Department of Toxic Substances

21   Control ("DTSC"), and Defendants.

22   14.      Plaintiff waited at least 90 days after receipt of the notices of endangerment and

23   intent to file suit before filing this action.

24   15.      Plaintiff has satisfied all jurisdictional prerequisites to filing this Complaint.

25   **GENERAL ALLEGATIONS**

26   ***Operations at the Property***

27   16.      The Property is located in a densely-populated urban area of mixed commercial and

28   residential use.



-3-

17.     Historically a gasoline station operated at the Property from 1923 to 1958, followed by automotive repair and autobody repair that operated from circa 1948 to 1962.

18.     S&K Toyota operated at the Property and surrounding properties from at least 1962 to 1990.

19.     After S&K Toyota ceased operations of the automotive business in approximately 1990, no further automotive business utilizing the Chemicals of Concern was conducted at the Property.

20.     Environmental investigations at the Site demonstrate that that soil, soil vapor, and potentially groundwater are impacted by chlorinated volatile organic compounds ("VOCs"), including tetrachloroethylene ("PCE") and trichloroethylene ("TCE") and their breakdown products (collectively, "Chemicals of Concern").

21.     Based on sampling data, it is possible Chemicals of Concern may be from off-site sources which are were historically part of the S&K Toyota Facilities.

22.     During its operations at the Property, S&K Toyota handled, generated, disposed of, released, used, or stored Chemicals of Concern.

23.     S&K Toyota operated its business at the Property when Chemicals of Concern were released into the environment.

24.     Charles Kilmer had a substantial role in the ownership and control of S&K Toyota, the auto businesses that operated on the Property, and in the management and operations of that business during his relevant time period at the Property, including, for instance, as officer, director, manager, and/or shareholder of such business.

25.     Charles Kilmer was the alter ego of the corporate entity that operated during his relevant time period at the Property because, inter alia, of his controlling interest in the corporation, his complete dominance and control over the corporation such that no separateness or individuality between him and the corporation existed, and his failure to follow and adhere to the formalities required for the corporation's existence. Therefore, failure to "pierce the corporate veil" and hold this individual defendant liable in lieu of or in addition to the corporation would result in injustice and prejudice to Plaintiff.



26.     Charles Kilmer exercised substantial influence and control over the operations of S&K Toyota, the auto businesses at the Property, during his relevant time period at the Property, including the use, handling, storage, disposal, transportation, and release of Chemicals of Concern.

27.     Coramarie Allengaugh knew or should have known of the contamination and failed to prevent or abate the contamination from Chemicals of Concern. Landowners, even those not in possession, have an affirmative duty to exercise ordinary care to maintain their property in a reasonably safe condition.

### The Contamination

28.     The source of Chemicals of Concern in the environment at the Site is S&K Toyota's auto businesses that operated its Facilities at the Property and adjoining properties continuously for approximately 76 years.

29.     The Chemicals of Concern are each a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(h), and are each a hazardous waste and solid waste as those terms are defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

30.     The Chemicals of Concern include chlorinated hydrocarbons, specifically tetrachloroethylene (aka, tetrachloroethene, perchloroethylene, and Perc) (collectively, "PCE"), and associated degradation products, including trichloroethylene (aka, trichloroethene, 1,1,2-trichloroethene, ethene, and trichloro) ("TCE"), dichloroethane ("DCE"), and vinyl chloride ("VC").

31.     PCE is a manmade chemical.

32.     TCE is a manmade chemical.

33.     DCE is a manmade chemical.

34.     VC is a manmade chemical.

35.     PCE is not naturally occurring in the environment.

36.     TCE is not naturally occurring in the environment.

37.     DCE is not naturally occurring in the environment.

38.     VC is not naturally occurring in the environment.



-5-

39.     TCE is a breakdown chemical of PCE.

40.     DCE is a breakdown chemical of PCE.

41.     VC is a breakdown chemical of PCE.

42.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE is closely regulated by the state of California and the federal government.

43.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, TCE is closely regulated by the state of California and the federal government.

44.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, DCE is closely regulated by the state of California and the federal government.

45.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, VC is closely regulated by the state of California and the federal government.

46.     PCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(h).

47.     TCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

48.     DCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

49.     VC is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

50.     When PCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

51.     When TCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

52.     When DCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.



53.     When VC is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

54.     All groundwater within the state of California, including the groundwater at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050.

55.     Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of Chemicals of Concern in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded Chemicals of Concern, or controlled and/or operated the Property or business from which Chemicals of Concern were released or otherwise discarded, and failed to prevent or abate the contamination caused by the Chemicals of Concern.

56.     At various times from at least 1962 to 1990, Defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

57.     Once the various discharges of Chemicals of Concern, whether intentional, sudden and accidental, or otherwise were released into the environment, these Chemicals of Concern continued to spread and migrate within the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California.

58.     As a result of the discovery of the soil vapor contamination, on January 19, 2021, the Alameda County Department of Environmental Health ("ACDEH") issued a Notice of Responsibility for Site Cleanup Program requiring Plaintiff to investigate the concentrations and distributions of Chemicals of Concern at the Property. These preliminary and initial investigations have caused Plaintiff to incur response costs, including fees and costs for additional investigation and the identification of potentially responsible parties at the Site.

59.     As a result of Defendants' releases of Chemicals of Concern at the Site, Plaintiff has

incurred and will continue to incur response costs and/or remedial costs in order to investigate, mitigate, and remediate the contamination, including research and identification of potentially responsible parties, initial or preliminary investigation costs, initial or preliminary monitoring costs, mitigation costs, and ACDEH oversight costs.

60.     Plaintiff has demanded that Defendants defend, indemnify, and hold Plaintiff harmless, but none of the Defendants have provided a defense, indemnity, or held Plaintiff harmless.  Plaintiff is an innocent owner of the Property and has not caused or contributed to the contamination at the Site.

61.     Defendants owned or operated an automotive business, or the Property, at the time Chemicals of Concern were spilled, released, and discharged at the Site due to the willful, intentional, reckless, negligent, or improper use, handling, storage, and/or disposal practices of automotive operations.

62.     Defendants owned or operated an automotive business, or the Property, at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of lack of proper maintenance of automotive equipment.

63.     Defendants operated an automotive business at the time Chemicals of Concern were spilled, released, and discharged at the Site during the delivery of PCE or TCE.

64.     All groundwater within the state of California, including the groundwater in, at, and around the Site and all groundwater that has allegedly been adversely impacted by contamination at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050. The groundwater at and migrating to or from the Site has potentially been or is threatened with being adversely impacted by alleged contamination at or emanating to or from the Site.

65.     Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of Chemical of Concern in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded Chemicals of Concern, or controlled or operated the Property or business from which Chemicals of Concern were released or otherwise discarded, and failed to



1  prevent or abate the contamination from Chemicals of Concern.

2       66.    At various times from the 1962 to the present, Defendants intentionally, negligently,

3  suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the

4  environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the

5  waters of the state of California, at the Site.

6       67.    Once released into the environment, these Chemicals of Concern continued to

7  spread and migrate within the environment at the Site, causing additional harm to the environment

8  and continuing to threaten public health and the environment.

9       68.    The Site needs to be further investigated and characterized so that a remedial action

10  plan can then be developed and implemented at the Site, and regulatory closure obtained.

11  **FIRST CAUSE OF ACTION**
**(Abatement of Imminent and Substantial Endangerment – RCRA § 7002(a)(1)(B))**

12  **(Against All Defendants)**

13       69.    Plaintiff realleges and incorporates by reference the allegations set forth above in

14  paragraphs 1 through 68, inclusive, as though set forth in full herein.

15       70.    Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff

16  brings this action, is RCRA's citizen enforcement provision.

17       71.    Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or

18  hazardous waste" (b) "may present an imminent and substantial endangerment to health or the

19  environment" and (c) the defendant falls within one of the categories of entities that Congress

20  declared liable for taking abatement action or "such other action as [this Court determines] may be

21  necessary."

22       72.    The persons declared liable by Congress for abatement of potential endangerments

23  under RCRA § 7002(a)(1)(B) are entities that contributed to "past or present handling, storage,

24  treatment, transportation, or disposal" of the "hazardous wastes" or "solid wastes" at issue.

25  Pursuant to the express terms of RCRA § 7002(a)(1)(B), these entities specifically include "any

26  past or present generator, past or present transporter, or past or present owner or operator of a

27  treatment, storage, or disposal facility."

28       73.    Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded



material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities." The term, however, does not include "solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section [1342 of Title 33] . . . ."

74.     None of the discharges from Defendants is solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows, or industrial discharges which are point sources subject to permits under Section 1342 of Title 33.

75.     Under Section 1004(5) of RCRA, 42 U.S.C. § 6903(5), "hazardous waste" is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of, or otherwise managed."

76.     Under Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

77.     Pursuant to authority under Section 3001 of RCRA, 42 U.S.C. § 6921, the Administrator of the U.S. E.P.A. promulgated regulations at 40 C.F.R., Part 261 listing or identifying certain hazardous wastes that the Administrator elects to subject to the strict regulatory program established in Subtitle III of RCRA, 42 U.S.C. §§ 6921-6931. Pursuant to RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1), any RCRA hazardous waste finally so "listed or identified" by the Administrator following formal, "notice and comment" rule-making as being subject to the hazardous waste regulatory program set forth in Subtitle III of RCRA, has been finally and conclusively determined for all purposes of any RCRA enforcement action, including the instant one, to be a "hazardous waste" as defined by RCRA § 1004(5). However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, substances also qualify as "hazardous wastes" and "solid wastes"

when the above statutory definitions (i.e., those set forth in RCRA §§ 1004(5) and (27)) are met. 40 C.F.R. § 261.1(b)(2).

78.     Plaintiff and each Defendant are each a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

79.     The Chemicals of Concern released into the environment by Defendants are solid wastes because they are discarded material resulting from commercial operations.

80.     The Chemicals of Concern released into the environment by Defendants are "hazardous wastes" because of their concentrations, or physical or chemical characteristics, they pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

81.     Tetrachloroethylene (PCE) is a listed hazardous waste under 40 CFR Section 261.33 with hazardous waste no. U210 and chemical abstract no. 127-18-4.

82.     Trichloroethylene (TCE) is a listed hazardous waste under 40 CFR Section 261.33 with hazardous waste no. U228 and chemical abstract no. 79-01-6.

83.     Each of the Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment in, at, and around the Site because each Defendant released or otherwise discarded Chemicals of Concern or controlled the property from which Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate this "solid waste," "hazardous waste," "waste," and "hazardous substance" contamination.

84.     The presence of Chemicals of Concern at and around the Site presents or may present an imminent and substantial endangerment to human health or the environment. The Regional Water Quality Control Board has an active case on the site and had issued a no further action letter prior to Plaintiff's purchase of the Property. However, the new environmental screening levels for PCE have prompted a re-opening of the environmental issues at the Site. Based on the prior sampling results showing PCE contamination and the new environmental sampling data required by Alameda County Health Department, Plaintiff has not been able to sell the Property to the current tenant at the Property and additional investigation, mitigation, and likely remediation



is being required by the Alameda County Health Department.

85.     Defendants' liability for abatement, Plaintiff's attorneys' fees, and for such other relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), is strict, joint, and several.

86.     Plaintiff gave the U.S. Attorney General and the EPA Administrator notice of the commencement of this action, as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

87.     Plaintiff is entitled to injunctive relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining Defendants and requiring each of them, jointly and severally, to take such action, including a complete, timely, and appropriate investigation and abatement of all actual and potential endangerments arising from the released solid wastes and hazardous wastes at and emanating to or from the Site.

**SECOND CAUSE OF ACTION**
**(Cost Recovery – CERCLA § 107(a))**
**(Against All Defendants)**

88.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 87, inclusive, as though set forth in full herein.

89.     Defendants used, processed, produced, stored, treated, and/or generated Chemicals of Concern in the course of their automotive operations at the Property.

90.     Defendants caused or contributed to the spilling, leaking, disposal, and release of Chemicals of Concern in the course of their automotive operations at the Property thereby creating a condition of hazardous substance contamination at the Site.

91.     As a result of and in response to Defendants' releases of Chemicals of Concern, Plaintiff has incurred responses costs and will incur costs for initial monitoring and investigation, mitigation, and remediation of the soil, soil vapor, groundwater (potentially), and indoor air at the Site.

92.     Defendants transported or arranged for transport of Chemicals of Concern which they owned or possessed to the Property, and stored, treated, and disposed of Chemicals of Concern at the Site, or otherwise owned or operated the Property during the time that Chemicals of Concern were disposed of at the Property and the Site. Defendants are thereby jointly and severally liable



under section 107(a) of CERCLA § 107(a), 42 U.S.C. § 9607(a).

93.     The Property and Site are each a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

94.     A "release" or threatened release of Chemicals of Concern and other "hazardous substances," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

95.     Plaintiff did not cause or contribute to, and deny liability for costs incurred as the result of, the alleged release or threatened release of Chemicals of Concern at the Site.  However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff has incurred and continues to incur necessary response costs to investigate, remove, mitigate, and remediate the environmental contamination at the Site consistent with the National Contingency Plan.

96.     Defendants are strictly liable to Plaintiff for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

**THIRD CAUSE OF ACTION**
**(Indemnity and Contribution Under California's Hazardous Substance Account Act)**
**(Against All Defendants)**

97.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 96, inclusive, as though set forth in full herein.

98.     The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 et seq. ("HSAA"), was enacted to encourage the expedient cleanup of "hazardous substances" that have been released into the environment.  In furthering this goal, the California Legislature included the statutory right of indemnity and contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

99.     Health & Safety Code § 25363(d) provides that "a person who has incurred response or corrective action costs in accordance with this chapter, Chapter 6.5 (commencing with Section 25100), or the federal act [referring to CERCLA] may seek contribution or indemnity from any person who is liable pursuant to this chapter."

100.    A "liable person" is defined in section 25323.5(a)(1) of HSAA as "those persons



-13-

described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a)).”

101.    “Those persons described in section 107(a)” of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility.  42 U.S.C. § 9607(a).

102.    Plaintiff is a “person” within the meaning of section 25319 of the Health & Safety Code.

103.    Defendant S&K Toyota is a “liable person” within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

104.    Defendant Charles Kilmer is a “liable person” within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

105.    Estate of Coramarie Hopfenbeck (aka Coramarie Allengaugh), Deceased, is a “liable person” within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

106.    As a direct and proximate result of Defendants’ actions that caused or contributed to releases of hazardous substances at the Site, Plaintiff has incurred and will continue to incur costs for removal or remedial actions taken in accordance with Chapter 6.5 commencing with Health & Safety Code § 25100 and/or CERCLA.  These include, but are not limited to, costs incurred for investigation, testing, site assessment, monitoring, mitigation, and remediation of the contamination.

107.    Plaintiff gave the Department of Toxic Substances Control (“DTSC”) notice of the commencement of this action, as required by section 25363(d) of the Health & Safety Code.

108.    Accordingly, under strict liability imposed by the HSAA, Plaintiff is entitled to indemnity and contribution from Defendants for the past and future costs of such removal or remedial action, including any work or activities related to such removal or remedial action such as investigation, mitigation, or cleanup and abatement work at the Site.

**FOURTH CAUSE OF ACTION**

**(Abatement of a Public Nuisance)**
**(Against All Defendants)**

109.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 108, inclusive, as though set forth in full herein.

110.    Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

111.    Section 3480 of the Civil Code defines a "public nuisance" as: "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

112.    Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around the Site, including the waters of the State of California, because each Defendant released, discharged, or otherwise discarded Chemicals of Concern during their automotive operations or controlled the Property from which Chemicals of Concern were released or otherwise discarded, but failed to prevent or abate such contamination.

113.    Defendants' acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, from, and around the Site, as well as the Defendants' failure to abate these conditions at or emanating from the Site, created a condition that is injurious to health and is indecent or offensive to the senses.

114.    The public nuisance condition and related endangerments to health and the environment arising from released Chemicals of Concern in, at, from, and around the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly- and privately-owned property and natural resources, including groundwater, as well as creating a public health risk from the vapors intruding peoples' homes and places of work.

115.    Defendants have caused, created, maintained, contributed to, and neglected to abate



a "public nuisance," as defined in Civil Code sections 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the Chemicals of Concern contamination.

116.    The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

117.    Plaintiff has suffered special injury and damages as a direct and proximate result of the alleged continuing public nuisance and/or public nuisance *per se* created by Defendants' ownership and operation of the Property or automotive business, because Plaintiff has been unable to sell the Property to Plaintiff's tenant.  Plaintiff and its tenant are in a purchase and sale contract for the Property, but because of the contamination the tenant is not able to obtain financing to purchase the Property.   Additionally, Plaintiff has been and will be required to conduct additional investigation, mitigation, and remediation of the soil, soil vapor, groundwater, and indoor air at the Property.   These conditions have adversely impacted the Plaintiff's free and normal use and enjoyment of the Property, that is to sell or finance the Property.

118.    Defendants have failed to comply with federal, state, local, and common law.

119.    The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

120.    Plaintiff did not consent to Defendants' conduct in causing and contributing to the public nuisance.

121.    Defendants are strictly and jointly and severally liable for abatement of the public nuisance.

122.    Plaintiff is entitled to relief restraining Defendants and requiring each of them,

jointly and severally, promptly and competently, to take such action as may be necessary to abate the public nuisance and for reimbursing Plaintiff for all response costs incurred and to be incurred at the Site.

**FIFTH CAUSE OF ACTION**
**(Abatement of a Private Nuisance)**
**(Against All Defendants)**

123.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 122, inclusive, as though set forth in full herein.

124.    Defendants caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, from, and around the Site, including the waters of the State of California, because each Defendant released or otherwise discarded those Chemicals of Concern during their automotive operations or controlled the equipment or Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

125.    Defendants' acts or omissions contributed to or caused the discharge and release of Chemicals of Concern in, at, from, and around the Site, which have interfered with Plaintiff's free use and enjoyment of their property.

126.    The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, Civil Code sections 3479-3480, California Code of Civil Procedure section 731, California Penal Code sections 372 and 374.8, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

127.    Defendants have failed to comply with federal, state, local, and common law.

128.    The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

129.    Defendants are strictly and jointly and severally liable for abatement of the private



nuisance.

130.   As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiff has suffered and continues to suffer damages as alleged herein. The above-described acts, omissions, and conduct of Defendants are and have been without the consent, knowledge, against the will, and in violation of the rights of Plaintiff.

131.   Plaintiff is entitled to injunctive relief restraining Defendants and requiring each of them, jointly and severally, promptly and competently, to take such action as may be necessary to abate the alleged continuing private nuisance and for reimbursing Plaintiff for all past and future response costs and other damages.

**SIXTH CAUSE OF ACTION**
**(Continuing Trespass)**
**(Against All Defendants)**

132.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 131, inclusive, as though set forth in full herein.

133.   Defendants, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, groundwater, and indoor air at the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil and groundwater into the soil and groundwater of adjacent properties and buildings.

134.   Unless Defendants are ordered immediately to clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air, it will be necessary for Plaintiff to commence many successive actions against Defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

135.   Plaintiff has no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Defendants immediately to investigate, mitigate, and clean up the alleged contamination of the soil, soil vapor, groundwater, and indoor air at, beneath, and around the Site.

136.   As a direct and proximate result of the acts, omissions, and conduct of Defendants

and of the continuing trespass caused thereby, Plaintiff has suffered and continues to suffer damages as alleged herein, including other consequential, incidental, and general damages to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(Contribution)**
**(Against All Defendants)**

137.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 136, inclusive, as though set forth in full herein.

138.     Section 1432 of the Civil Code provides in pertinent part: "a party to a joint, or joint and several obligation, who satisfies more than its share of the claim against all, may require a proportionate contribution from all the parties joined with him."

139.     As a direct and proximate result of Defendants' releases of hazardous substances into the environment, as alleged above, Plaintiff has and will continue to incur investigation, mitigation, monitoring and cleanup fees and costs arising from the contamination at the Site.

140.     Plaintiff has and will incur more than their fair share of response costs for the hazardous substances at the Site.

141.     As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Plaintiff is entitled to contribution from Defendants for any and all response costs Plaintiff has incurred and will continue to incur in connection with the contamination.

**EIGHTH CAUSE OF ACTION**
**(Equitable Indemnity)**
**(Against All Defendants)**

142.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 141, inclusive, as though set forth in full herein.

143.     The liability, if any, that Plaintiff may have to any person or entity, including, without limitation, any Defendants, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

144.     As between Plaintiff and Defendants, Defendants are solely responsible for all costs and expenses to investigate, mitigate, and clean up the contamination at and around the Site.



145.    As between Plaintiff and Defendants, Defendants are responsible for any legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons concerning or related to the presence of the contaminants at and around the Site.

146.    In the event that Plaintiff is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of contaminants at and around the Site, brought against Plaintiff by any persons or entities, public or private, such liability is purely secondary, imputed, or technical.  Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

147.    As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify and hold harmless Plaintiff from and against all costs, arising out of, or relating to the alleged contamination at and emanating from the Property, and any other costs they have incurred or will incur in the future.

**NINTH CAUSE OF ACTION**
**(Declaratory Relief – CERCLA § 113(g) and Cal. Code Civ. Proc. § 1060)**
**(Against All Defendants)**

148.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 147, inclusive, as though set forth in full herein.

149.    An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Plaintiff contends, and Defendants deny, that Defendants are responsible for the contamination at the Site and are obligated to contribute to the costs of the investigation, mitigation, and cleanup.

150.    Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and remedial works are ongoing, Plaintiff will incur necessary response costs, including but not limited to investigatory, remedial, mitigation, and removal expenses, and attorneys' fees in the future.

151.    Plaintiff desires a judicial determination of its rights and duties and a declaration that Defendants are liable to Plaintiff for all response costs incurred or to be incurred by Plaintiff at the Site as a result of releases of Chemicals of Concern by Defendants and that Defendants are liable for the cleanup of the alleged contamination at the Site.



152.     Plaintiff is entitled to a declaratory judgment establishing the liability of Defendants for such response costs for the purpose of this and any subsequent action or actions to recover further response costs.

153.     A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiff may ascertain its rights and duties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in their favor for the following:

1.     For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate, mitigate, and abate the nuisance conditions and endangerments to health or the environment that may be presented by RCRA Defendants' use and disposal of "hazardous substances" as alleged above.

2.     For an order requiring Defendants to undertake at their sole cost all actions necessary to investigate, mitigate, and remediate the alleged contamination;

3.     For a declaration that Defendants are liable under CERCLA for all past, present, and future response costs and other costs which may be incurred by Plaintiff at the Site.

4.     For a declaration that Defendants are liable under HSAA § 25363(d) and are liable to Plaintiff in contribution and/or indemnity under HSAA § 25363(d) for all past, present, and future response costs and other costs which may be incurred by Plaintiff at the Site;

5.     For declaratory relief on all causes of action;

6.     For damages from Defendants to compensate Plaintiff for the costs it has incurred and will incur in monitoring and investigation, response, removal, mitigation, or remedial efforts, in excess of $2,500,000, the exact amount of which will be ascertained according to proof at trial;

7.     For compensatory and consequential damages;

8.     For an award to Plaintiff for its costs of litigation, including attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 6972(e) and Cal. Civ. Proc. Code § 1021.5;

9.     For prejudgment and post-judgment interest;



10.     For all costs of suit herein;

11.     For such other and further relief as this Court deems just and proper.

JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of any and all issues so triable.

DATED: November 12, 2021                    PALADIN LAW GROUP® LLP


                                            By: /s/ *John R. Till*

                                            John R. Till
                                            Counsel for Luis Family Trust, by and through its
                                            trustees, James M. Luis and Linda M. Luis



-22-

COMPLAINT